ANDREW A. WOOD (SBN 279403)
awood@bakerlaw.com
BAKER & HOSTETLER LLP
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone:  714.754.6600
Facsimile:   714.754.6611

DAVID B. RIVKIN, JR. (*pro hac vice*)
drivkin@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone:  202.861.1500
Facsimile:   202.861.1783

(Additional counsel listed after caption)

*Attorneys for Claimant*
*TAREK OBAID*

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>       v.<br><br>CERTAIN RIGHTS TO AND<br>INTERESTS IN SHARES OF SERIES<br>D PREFERRED STOCK IN<br>PALANTIR TECHNOLOGIES,<br><br>             Defendant. | Case No.: 2:17-cv-04446-DSF-PLA<br><br>**CLAIMANT TAREK OBAID'S<br>NOTICE OF MOTION AND<br>MOTION TO DISMISS<br>VERIFIED COMPLAINT IN REM<br>PURSUANT TO RULES 12(B)(2)<br>AND 12(B)(3); MEMORANDUM<br>OF POINTS AND AUTHORITIES<br>IN SUPPORT**<br><br>Hearing Date: November 13, 2017<br>Time: 1:30 p.m.<br>Judge: Hon. Dale S. Fischer<br>Courtroom: 7D |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   (Additional Counsel of Record)

2   JONATHAN R. BARR (*pro hac vice*)
    jbarr@bakerlaw.com
3   ELIZABETH PRICE FOLEY
    efoley@bakerlaw.com (*pro hac vice* pending)
4   BAKER & HOSTETLER LLP
    1050 Connecticut Avenue, NW
5   Washington, D.C. 20036
    Telephone:   202.861.1500
6   Facsimile:   202.861.1783

7   JONATHAN B. NEW (*pro hac vice*)
    jnew@bakerlaw.com
8   BAKER & HOSTETLER LLP
    45 Rockefeller Plaza
9   New York, NY  10111
    Telephone:   212.589.4200
10  Facsimile:   212.589.4201

11  *Attorneys for Claimant*
    *TAREK OBAID*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
    PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ....................................................................................................... 3

I.   THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER MR. OBAID BECAUSE HE DOES NOT HAVE SUFFICIENT MINIMUM CONTACTS ................................................................................. 4

II.  THE GOVERNMENT HAS FAILED TO ALLEGE FACTS SUPPORTING A FINDING OF SPECIFIC PERSONAL JURISDICTION. ........................................................................................... 8

    A.   Mr. Obaid Has Not Purposefully Availed Himself of California's Protection or Laws. .................................................................................. 8

    B.   The Government's Claim Does Not "Arise Out Of" or "Relate To" Mr. Obaid's Contacts with California. ........................................... 12

    C.   The Exercise of Specific Personal Jurisdiction in the C.D. Calif. Would be Unreasonable. ........................................................................ 14

    D.   The Court Cannot Exercise Personal Jurisdiction Over Mr. Obaid on a Conspiracy Theory. ...................................................................... 17

III. VENUE IS NOT PROPER IN THIS DISTRICT. ....................................... 18

    A.   The Palantir Stock is Not "Found" in this District. ........................... 19

    B.   The "Acts or Omissions" Giving Rise to this Forfeiture Action Did Not Occur in this District. ........................................................... 22

CONCLUSION .................................................................................................. 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abromats v. Abromats*,
No. 16-CV-60653-BLOOM/Valle, 2016 WL 4366480 (S.D. Fla.
Aug. 16, 2016) ................................................................................. 5

*Adobe Sys., Inc. v. Cardinal Camera & Video Ctr., Inc.*,
No. 15-cv-02991-JST, 2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) ............. 9, 10

*Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*,
115 Fed. Appx. 662 (5th Cir. 2004) ................................................. 18

*Angelini Metal Works Co. v. Hubbard Iron Doors, Inc.*,
No. CV 11-6392-GHK(PLAx), 2016 WL 6304476 (C.D. Cal. Jan.
5, 2016) ...................................................................................... 17

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987) ..................................................................... 15

*Atcom Support LP v. M/V HC Nadja Maria*,
Civ. No. 15-28-RGA, 2016 WL 5867407 (D. Del. Oct. 4, 2016) ................. 5

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ...................................................... 12, 15

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) ....................................................... 11

*Bernstein v. Stiller*,
Civ. No. 09-659, 2013 WL 3305219 (E.D. Pa. June 27, 2013) ................... 5

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008), *cert. denied*, 555 U.S. 1171 (2009) .......... 3, 9, 10

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ....................................................... 11

*Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*,
137 S. Ct. 1773 (2017) .................................................................. 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Chrysler Corp. v. Fedders Corp.*,
  643 F.2d 1229 (6th Cir. 1981), *cert. denied*, 454 U.S. 893 (1981) ................... 18

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .......................................................... 15, 6

*Deutsch v. Schoelkopf*,
  No. 3:16-cv-05561-RBL, 2016 WL 7231402 (W.D. Wash. Dec.
  14, 2016) ...................................................................................... 5

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir.2009) (per curiam) .......................................... 3

*Doe v. Am. Nat'l Red Cross*,
  112 F.3d 1048 (9th Cir.1997) ........................................................... 8

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ..................................................... 13, 14

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................. 17

*FDIC v. British-Am. Ins. Co.*,
  828 F.2d 1439 (9th Cir. 1987) ............................................... 14, 15, 16

*Ford Motor Co. v. GreatDomains.com, Inc.*,
  177 F.Supp.2d 656 (E.D. Mich. 2001) .............................................. 5

*Gen. Steel Domestic Sales, LLC v. Suthers*,
   No. CIV. S-06-411 LKK/KJM, 2007 WL 704477, at *5 (E.D. Cal.
  Mar. 2, 2007) .............................................................................. 17

*H. Ray Baker, Inc. v. Associated Banking Corp.*,
  592 F.2d 550 (9th Cir. 1979) ........................................................... 7

*Harrods Ltd. v. Sixty Internet Domain Names*,
  302 F.3d 214 (4th Cir. 2002) ........................................................... 5

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
  649 F.2d 1266 (9th Cir. 1981) ..................................................... 14, 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*International Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ............................................................ 4, 6

*J. McIntyre Machinery, Ltd. v. Nicastro*,
 131 S. Ct. 2780 (2011) ............................................................. 9

*Jellenik v. Huron Copper-Mining Co.*,
 177 U.S. 1 (1900) 11 .............................................................. 19

*Johnston v. Arbitrium (Cayman Islands) Handels AG*,
 198 F.3d 342 (2d Cir. 1999) ...................................................... 5

*Joseph Saveri Law Firm, Inc. v. Criden*,
 __ Fed. Appx. __, No. 15-15534, 2017 WL 2406736 (9th Cir. June
 2, 2017) ................................................................................ 10

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
 115 F.3d 1020 (D.C. Cir. 1997) ................................................ 18

*Lee v. Haj*,
 No. CV 15–8608 DMG, 2016 WL 7486599 (C.D. Cal. Jan. 4,
 2016) ..................................................................................... 3

*Mavrix Photo, Inc. v. Brand Tech's, Inc.*,
 647 F.3d 1218 (9th Cir. 2011) ................................................ 3, 4

*Mendoza v Cisneros*,
 No. 14-cv-3324-WJM-KMT, 2015 WL 5741253 (D. Colo. Oct. 1,
 2015) ..................................................................................... 5

*Nastro v. D'Onofrio*,
 263 F. Supp.2d 446 (D. Conn. 2003) ......................................... 20

*Office Depot Inc. v. Zuccarini*,
 596 F.3d 696 (9th Cir. 2010) ..................................................... 6

*Pacific Tel. Co. v. Franchise Tax Bd.*,
 498 P.2d 1030 (Calif. 1972) (en banc) ...................................... 19

*Paulson Inv. Co., Inc. v. Norbay Sec., Inc.*,
 603 F. Supp. 615 (D. Ore. 1984) ................................................ 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ....................................................... 12, 16

*Peterson v. Kennedy*,
  771 F.2d 1244 (9th Cir. 1985) ............................................................ 10

*Picot v. Manos*,
  780 F.3d 1206 (9th Cir. 2015) ............................................................ 11

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) ................................................................ 3

*Prawato v. PrimeLending*,
  720 F. Supp. 2d 1149 (C.D. Cal. 2010) ................................................ 3

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ................................................................ 9

*Sarkis v. Lajcak*,
  425 Fed. Appx. 557 (9th Cir. 2011), *cert. denied*, 565 U.S. 944
  (2011) .................................................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................ 3

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ..................................................................... *passim*

*Sinatra v. Nat'l Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988) ............................................................ 15

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) *abrogated on other grounds by Shelby Cty. v.
  Holder*, 86 S. Ct. 803 (2013) ............................................................... 6

*Stauffacher v. Bennett*,
  969 F.2d 455 (7th Cir. 1992), *cert. denied*, 506 U.S. 1034 (1992) .................. 17

*Tatung Co., Ltd. v. Hsu*,
  No. SACV 13-1743-DOC, 2016 WL 7508190 (C.D. Cal. Aug. 18,
  2016) .................................................................................................... 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

v

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

*Tenn. Student Assistance Corp. v. Hood*,
   541 U.S. 440 (2004) ................................................................. 6

*Texas Beef Ltd. v. McClave State Bank*,
   No. 2:10-CV-0285-J., 2011 WL 597027 (N.D. Tex. Feb. 18, 2011) .................. 5

*Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa
   Rica*,
   614 F.2d 1247 (9th Cir.1980), *cert. denied*, 475 U.S. 1122 (1986) ................ 10

*UMG Recordings, Inc. v. Global Eagle Ent., Inc.*,
   No. CV 14–03466 MMM, 2015 WL 12752879 (C.D. Cal. July 2,
   2015) ................................................................................ 17

*United States v. $6,190.00 in U.S. Currency*,
   581 F.3d 881 (9th Cir. 2009) ........................................................ 22

*United States v. $633,021.67 in U.S. Currency*,
   842 F. Supp. 528 (N.D. Ga. 1993) ................................................... 23

*United States v. $84,740.00 Currency*,
   981 F.2d 1110 (9th Cir. 1992) ..................................................... 6, 7

*United States v. 105,800 Shares of Common Stock of FirstRock
   Bancorp, Inc.*,
   825 F. Supp. 191 (N.D. Ill. 1993) ................................................... 21

*United States v. All Assets Held in Account Number XXXXXXXX*,
   83 F. Supp. 3d 360 (D.D.C. 2015) ................................................... 6

*United States v. Approx. $1.67 Million (US) in Cash, Stock, and Other
   Valuable Assets Held*,
   513 F.3d 991 (9th Cir. 2008) .................................................... 22, 23

*United States v. Bank of Am. Account No. XXXXXXXX4939*,
   No. 5:14-CV-723 (ATB), 2015 WL 224774 (N.D.N.Y. Jan. 15,
   2015) ................................................................................ 23

*United States v. Batato*,
   833 F.3d 413 (4th Cir 2016), *cert. denied,* 2017 WL 1300219 (U.S.
   Oct. 2, 2017) .................................................................... 13, 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

*United States v. Contents of Account No. 2033301 in the Name of Luis Freixas*,
   831 F. Supp. 337 (S.D.N.Y. 1993) ...................................................................... 23

*United States v. McCarthy*,
   271 F.3d 387 (2d Cir. 2001), *abrogated on other grounds by Eberhart v. United States,* 546 U.S. 12 (2005) ...................................... 22

*United States v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*,
   362 F. Supp. 2d 1175, (C.D. Cal. 2005) .............................................................. 4

*United States v. Real Property Located at 11205 McPherson Ln., Ojai, Cal.*,
   754 F. Supp. 1483 (D. Nev. 1991) ................................................................. 5, 6

*United States v. Silvestri*,
   409 F.3d 1311 (11th Cir. 2005) ......................................................................... 24

*United States v. Ten Thousand Dollars ($10,000) in U.S. Currency*,
   860 F.2d 1511 (9th Cir. 1988) ............................................................................. 6

*Villoldo v. Castro Ruiz*,
   No. 2:13-mc-00016, 2013 WL 5704466 (W.D. Pa. Oct. 18, 2013) ..................... 5

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ....................................................................... 9, 16, 17

*Wells Fargo Bank Minn., NA v. Envirobusiness, Inc.*,
   22 N.E.3d 125 (Ill. Ct. App. 2014) ................................................................... 20

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................................. 8

*Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc.*,
   134 A.3d 992 (N.J. Super. Ct. 2016) ................................................................. 20

**Statutes**

18 U.S.C. §§ 981(a)(1)(A) and (C) ................................................................ 1, 12, 22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

18 U.S.C. § 1956 ................................................................................ 22

18 U.S.C. § 1956(a)(1)(B)(i) ............................................................ 22

18 U.S.C. § 1956(a)(2)(B) ................................................................ 22

18 U.S.C. § 1956(h) .......................................................................... 24

18 U.S.C. § 1957 ............................................................................... 22

28 U.S.C. §§ 1355(b) ........................................................................ 22

28 U.S.C. § 1355(b)(1)(A) .......................................................... 18, 19

28 U.S.C. § 1355(b)(2) ............................................................... 18, 19

28 U.S.C. § 1395(b) ................................................................ 18, 19, 1

28 U.S.C. § 1406(a) .......................................................................... 19

Cal. Com. Code § 8102 ..................................................................... 19

Cal. Com. Code § 8301(a)(1) ........................................................... 19

Cal. Com. Code § 8112 ............................................................... 19, 20

Del. Code Ann., tit., 8, § 169 ........................................................... 21

**Rules**

Fed. R. Civ. Proc. 12(b)(2) ................................................................ 3

Fed. R. Civ. Proc. 12(b)(3) .............................................................. 19

Supp. Rule E(4)(a) ............................................................................ 21

**Other Authorities**

Money Laundering Enforcement Improvements Act of 1991 ............................... 23

Restatement (Second) of Conflict of Laws § 64 .................................... 20

Roy Finkle & Keith Paul Bishop, Marsh's Calif. Corp. Law § 8.03
    (4th ed. 2017) ........................................................................... 19, 20

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

viii

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

William Meade Fletcher, Fletcher Cyclopedia of the Law of Corps. ............... 19, 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)
611489763.1

## **NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT ON November 13, 2017, before the Hon. Dale S. Fischer, in Courtroom 7D, or as soon thereafter as the matter may be heard in the above-titled Court located at the First Street Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Claimant Tarek Obaid will and hereby does respectfully move this Court for an order dismissing this action.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and Supplemental Rule G on the basis of a lack of personal jurisdiction and improper venue. This motion is based on this Notice of Motion and Motion to Dismiss and the Memorandum of Points and Authorities attached hereto and such other papers and arguments as the Court may consider.[1]

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 3, 2017 in Los Angeles, California.

/ / /

/ / /

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[1] Claimant is contemporaneously filing a motion to strike portions of the verified complaint *in rem* pursuant to Fed. R. Civ. P. 12(f).

x

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

DATE: October 11, 2017

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    */s/ David B. Rivkin, Jr.*
       ANDREW A. WOOD
       DAVID B. RIVKIN, JR.
       JONATHAN R. BARR
       ELIZABETH PRICE FOLEY
       JONATHAN B. NEW

       *Attorneys for Claimant*
       *TAREK OBAID*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

xi

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

## MEMORANDUM OF POINTS AND AUTHORITIES

Claimant Tarek Obaid moves to dismiss the United States' Verified Complaint for Forfeiture *In Rem*, June 16, 2017, under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(3) for lack of venue.

## INTRODUCTION[2]

The United States ("government") seeks, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), to forfeit 2,500,000 shares of Series D Preferred stock in Palantir Technologies Inc. owned by Claimant Tarek Obaid. Palantir is a Delaware corporation headquartered in Palo Alto, California.[3] Mr. Obaid is a citizen of Saudi Arabia who resides in Switzerland. He is the CEO and co-founder of PetroSaudi International Ltd. ("PetroSaudi"), an oil services company incorporated in Saudi Arabia. Compl. ¶¶ 20, 57.

In this and related actions, the government claims that various individuals, including a Malaysian national known as Jho Low ("Low"), conspired to defraud 1Malaysia Development Berhad ("1MDB") of billions of dollars between 2009-2014. Compl. ¶¶ 6, 7. 1MDB is "a strategic investment and development company wholly-owned by the government of Malaysia." Compl. ¶ 6. As part of this scheme, the Complaint alleges that $700 million supposed to be paid by 1MDB to a joint venture between that entity and PetroSaudi was instead diverted and paid into a Swiss bank account in the name of Good Star Limited ("Good Star"), Compl. ¶ 9, controlled by Low. Compl. ¶¶ 50, 62.

Mr. Obaid is alleged to have purchased his Palantir shares with funds "traceable to the $700 million wire transfer from 1MDB to the Good Star account."

---

[2] Claimant does not concede any of the allegations in the complaint, but recognizes that for certain purposes the Court must presume the truth of Plaintiff's non-conclusory allegations in considering these motions.

[3] *See* SEC Form D Notice of Exempt Offering of Securities (Dec. 11, 2014), available at https://www.sec.gov/Archives/edgar/data/1321655/000132165514000005/xslFormDX01/primary_doc.xml.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Compl. ¶ 751. In particular, "days after the $700 million wire transfer from 1MDB to the Good Star account," Mr. Obaid is alleged to have received an $85 million wire transfer from Good Star into an account at J.P. Morgan (Suisse). Compl. ¶ 752. This transfer was allegedly "processed through a correspondent bank account at J.P. Morgan Chase in New York," although the Complaint does not state whether these funds actually passed through the United States. Compl. ¶ 752. About three months later, an additional amount of $68 million was also alleged to have been directed to Mr. Obaid's J.P. Morgan (Suisse) account. Compl. ¶ 753. The Complaint does not allege that this second transfer was "processed" through, or otherwise connected with, the United States.

On or about March 10, 2010, over five months after the initial transfer from Good Star to Mr. Obaid, the Complaint alleges that Mr. Obaid signed a Stock Purchase Agreement with Palantir, listing a Swiss firm as point of contact, and an Investor Questionnaire. Compl. ¶¶ 754-55. With respect to this transaction, the Complaint also alleges that a Palantir employee (location not stated) sent an email to Mr. Obaid's representative in Switzerland, confirming receipt of Mr. Obaid's signature pages, that the investment was in Mr. Obaid's name, and indicating that the "final step" would be payment for the shares. Compl. ¶ 756. Payment was made by a transfer of $2 million from Mr. Obaid's J.P. Morgan (Suisse) account to a Palantir account at Silicon Valley Bank in California. Compl. ¶ 757. The Complaint also alleges that "[a] stock certificate issued by Palantir shows that OBAID was issued 2,500,000 shares of Series D Preferred Stock in Palantir on or about March 12, 2010." Compl. ¶ 758.

These contacts are wholly insufficient to support personal jurisdiction over Mr. Obaid or venue in the Central District of California. Indeed, the only contact the Complaint actually alleges with California is the payment made from a Swiss to a California bank. Indeed, while the government claims it has executed an arrest

warrant *in rem* for the Palantir shares, to date it has not filed a return of the warrant with this court, nor shared a copy thereof with Mr. Obaid, creating a serious question about whether the government has provided proper execution of process.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action for "lack of personal jurisdiction." *See* Fed. R. Civ. P. 12(b)(2). In opposing a Section 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Tech's, Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011); *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations in the plaintiff's complaint must be taken as true and any affidavit conflicts are resolved in plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800. If the district court decides the motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of the jurisdictional facts, based on the complaint and any affidavits. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *cert. denied*, 555 U.S. 1171 (2009).

Similarly, plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979); *Prawato v. PrimeLending*, 720 F. Supp. 2d 1149, 1151 (C.D. Cal. 2010). In ruling on a 12(b)(3) motion, the district court need not accept the allegations in the complaint as true, and facts outside the pleadings may be considered. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir.2009) (per curiam); *Lee v. Haj*, No. CV 15–8608 DMG (PJWx), 2016 WL 7486599, at *2 (C.D. Cal. Jan. 4, 2016).

## ARGUMENT

The government asks the court to exercise *in rem* jurisdiction over intangible property (stock) located outside the forum, based on alleged criminal activity that occurred outside the forum, and owned by a foreign national with no significant contacts with California or the United States. The court cannot adjudicate the government's claim without personal jurisdiction over the property owner, Mr.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

Obaid, and that exercise, based on such tenuous forum contacts, would violate constitutional due process. Similarly, venue is not proper in the Central District of California because the property the government seeks to forfeit is not present here, and none of the "acts or omissions giving rise to the forfeiture" are alleged to have taken place in this District or the United States. The Complaint must be dismissed on both of these grounds.

## I.   THE COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER MR. OBAID BECAUSE HE DOES NOT HAVE SUFFICIENT MINIMUM CONTACTS

The government has not alleged contacts by Mr. Obaid with California, or the United States as a whole, that are constitutionally-sufficient to support personal jurisdiction over him. Where federal law does not authorize personal jurisdiction specifically, the court applies the law of the state in which it sits. *Mavrix Photo,* 647 F.3d at 1223. California has asserted jurisdiction to the limits of federal due process, so the analyses under state and federal law are the same here. *Id.*

"Federal civil forfeiture actions are actions in rem*." United States v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*, 362 F. Supp. 2d 1175, 1180 (C.D. Cal. 2005). In *Shaffer v. Heitner*, 433 U.S. 186 (1977), the Supreme Court made clear that the due process minimum contacts standard of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), applies to *in rem* and *quasi in rem* cases, reasoning that "[t]he fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification." 433 U.S. at 212.

*Shaffer* involved a Delaware *quasi in rem* shareholder derivative action against non-resident officers and directors of Greyhound Corporation, based on sequestration of 82,000 shares of company stock they owned and that were deemed to be present in that state. *Id.* at 192. Defendants had no other meaningful contacts with Delaware. *Id.* at 216. The Court concluded that Delaware lacked personal

4

611489763.1

jurisdiction over defendants, despite the legal situs of their sequestered property there, explaining that "[t]he case for applying to jurisdiction in rem the same test of fair play and substantial justice as governs assertions of jurisdiction in personam is simple and straightforward." *Id.* at 207. *In rem* jurisdiction is really "jurisdiction over the interests of persons in a thing." *Id*. And, "[t]he standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe*." *Id.* In the absence of minimum contacts, a court cannot exercise personal jurisdiction over a litigant, even if the litigant owns property within the forum and "claims to the property itself are the source of the underlying controversy." *Id.* at 207-08.

Following *Shaffer*, numerous courts have applied the minimum contacts test both to *quasi in rem* and *in rem* suits. *See, e.g.*, *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 224 (4th Cir. 2002); *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 198 F.3d 342, 348-49 (2d Cir. 1999); *Deutsch v. Schoelkopf*, No. 3:16-cv-05561-RBL, 2016 WL 7231402, at *4 (W.D. Wash. Dec. 14, 2016) ("Courts apply the same minimum contacts test to *in rem* jurisdiction as is applied to personal jurisdiction."); *Atcom Support LP v. M/V HC Nadja Maria*, Civ. No. 15-28-RGA, 2016 WL 5867407, at *2 (D. Del. Oct. 4, 2016); *Abromats v. Abromats*, No. 16-CV-60653-BLOOM/Valle, 2016 WL 4366480, at *5 (S.D. Fla. Aug. 16, 2016); *Mendoza v Cisneros*, No. 14-cv-3324-WJM-KMT, 2015 WL 5741253, at *2 (D. Colo. Oct. 1, 2015); *Villoldo v. Castro Ruiz*, No. 2:13-mc-00016, 2013 WL 5704466, at *2 (W.D. Pa. Oct. 18, 2013); *Bernstein v. Stiller*, Civ. No. 09-659, 2013 WL 3305219, at *5 (E.D. Pa. June 27, 2013); *Texas Beef Ltd. v. McClave State Bank*, No. 2:10-CV-0285-J., 2011 WL 597027, at *3 (N.D. Tex. Feb. 18, 2011); *Ford Motor Co. v. GreatDomains.com, Inc.*, 177 F.Supp.2d 656, 658-59 (E.D. Mich. 2001). *See United States v. Real Property Located at*

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*11205 McPherson Ln., Ojai, Cal.*, 754 F. Supp. 1483, 1489 (D. Nev. 1991) (minimum contacts required in federal forfeiture proceeding).[4]

The Ninth Circuit has not had occasion to apply *Shaffer* in the civil forfeiture context, but it has readily acknowledged that traditional *in rem* jurisdiction has evolved, reflecting a "view of jurisdiction . . . based on due process concerns for 'fair play and substantial justice' [citation omitted] even when the court's jurisdiction is predicated on its control over an item of property or res." *United States v. Ten Thousand Dollars ($10,000) in U.S. Currency*, 860 F.2d 1511, 1513 (9th Cir. 1988) (citing *Shaffer*, and quoting *Int'l Shoe*, 326 U.S. at 316). *See also Office Depot Inc. v. Zuccarini,* 596 F.3d 696, 700 (9th Cir. 2010) ("Due process requires a constitutionally sufficient relationship among the defendant, the forum, and the litigation" in the context of a *quasi in rem* suit to collect a judgment).

The Ninth Circuit's decision in *United States v. $84,740.00 Currency*, 981 F.2d 1110 (9th Cir. 1992), is not to the contrary. That case involved a civil forfeiture claimant's assertion that her husband's death abated the government's ability to forfeit his assets. *Id*. at 1113. Among other things, she argued that *Shaffer* "eliminates the distinction between *in rem* and *in personam* proceedings such that those labels can no longer be the basis for distinguishing civil and criminal forfeiture proceedings," so that the criminal abatement doctrine applied to both. *Id*. at 1115. The Ninth Circuit correctly rejected such a misreading of *Shaffer*,

---

[4] An exception here is *United States v. All Assets Held in Account Number XXXXXXXX*, 83 F. Supp. 3d 360 (D.D.C. 2015), where the court rejected a minimum contacts analysis in a federal forfeiture action, relying on *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 453 (2004). *Tenn. Student Assistance Corp.*, however, was decided in the specialized bankruptcy area, and involved the question whether a debt could be discharged "without *in personam* jurisdiction over the State." *Id*. Individual due process rights were not involved and States have no such rights. *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966) ("The word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union.") *abrogated on other grounds by Shelby Cty. v. Holder*, 86 S. Ct. 803 (2013).

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

concluding that post-*Shaffer* distinctions between criminal and civil forfeiture proceedings continued to exist. The Ninth Circuit properly characterized *Shaffer* as follows: "In *Shaffer*, the Court rejected the concept that a state court could obtain personal jurisdiction over a defendant based merely upon the presence of property in that jurisdiction when the defendant has no other contact . . . with the state." *Id.* And, personal jurisdiction was not at issue in that case.

In this case, Mr. Obaid clearly does not have forum contacts sufficient to justify the court's exercise of personal jurisdiction, and this would be true even if Mr. Obaid's Palantir stock was located in the Central District of California. Although the *Shaffer* Court recognized that the presence of a litigant's property in the forum is relevant to the minimum contacts analysis, *Shaffer*, 433 U.S. at 208, this alone is not sufficient. *See H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 552 (9th Cir. 1979) (presence of a litigant's assets within the forum "is a relevant contact, though not one that is sufficient by itself to confer jurisdiction."). *See also Paulson Inv. Co., Inc. v. Norbay Sec., Inc.*, 603 F. Supp. 615, 619 (D. Ore. 1984) ("the mere presence of stock in Oregon is not sufficient" to establish minimum contacts under *Shaffer v. Heitner*).

As explained below, the legal situs of Mr. Obaid's Palantir stock is where the certificate issued for that stock is located. *See infra*, pp. 19-21. Significantly, the Complaint does not allege where that stock certificate was delivered, or where it is presently located. There is no allegation that the certificate is present in the Central District of California. Compl. ¶¶ 754, 756. As the purchase transaction was accomplished through Mr. Obaid's intermediaries located in Switzerland, this is the location that is suggested by the Complaint. Compl. ¶ 754, 756. And, in fact, the certificate is located in Switzerland. *See* Decl. of William Garcia.

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.   THE GOVERNMENT HAS FAILED TO ALLEGE FACTS SUPPORTING A FINDING OF SPECIFIC PERSONAL JURISDICTION

The court may exercise personal jurisdiction over a nonresident defendant like Mr. Obaid either generally or specifically. *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir.1997). Mr. Obaid does not live in California, nor is he alleged to have continuous, systematic, or substantial contacts with California. Thus, he is not subject to "general" personal jurisdiction in California. To sustain this suit, the government must show that Mr. Obaid is subject to "specific" personal jurisdiction here.

The Ninth Circuit requires satisfaction of three elements to support a finding of specific personal jurisdiction over a non-resident defendant: (1) acts by the defendant purposefully directed at the forum ("purposeful availment"); (2) the claim must "arise out of" those acts; and (3) the exercise of jurisdiction must be reasonable, comporting with the norms of fair play and substantial justice. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). All three must be satisfied to support a minimum contacts finding. None is present here.

### A.   <u>Mr. Obaid Has Not Purposefully Availed Himself of California's Protection or Laws</u>

The only contact the Complaint alleges between Mr. Obaid and California involves his purchase of the Palantir shares: The Complaint alleges that the shares were paid for by funds wired from an account owned by Mr. Obaid in Switzerland to a Palantir account at Silicon Valley Bank in California. Compl. ¶ 757. In addition, a Palantir employee (from an unspecified location) sent an email to Mr. Obaid's "representative in Switzerland," indicating that Palantir received Mr. Obaid's signature pages for the Stock Purchase Agreement, that a $2 million payment should be made, and that this investment was understood to be in Mr. Obaid's name. Compl. ¶¶ 756. Palantir issued a stock certificate for the shares,

8

although the Complaint does not allege from where or to whom it was sent. Compl. ¶ 758. The government clearly has not met its burden here as these contacts between Mr. Obaid, Palantir and its personnel are manifestly insufficient to establish "purposeful availment." Minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

This is particularly true of isolated transactions between out-of-state and California residents. Thus, in *Boschetto*, the court held that a "lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California. . . . [A] contract for the sale of a good, is insufficient to have created a substantial connection with California." 539 F.3d at 1017. That case involved a dispute over a "classic car" purchase/sale on the eBay auction website. The seller and buyer communicated by email between California and Wisconsin regarding the transaction, and the vehicle was shipped to California. The Ninth Circuit affirmed the District Court's dismissal for lack of personal jurisdiction. *Id.* at 1014. *See also Bristol-Myers Squibb Co. v. Superior Ct. of Calif.,* 137 S. Ct. 1773, 1783 (2017) ("The bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State."); *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring in the judgment) ("None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales efforts indicated here, is sufficient [to establish specific personal jurisdiction]."); *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir. 1991) ("[T]he existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). Significantly, this principle has been extended "to cases involving multiple sales entering the forum simply because the purchasers happened to live in the forum." *Adobe Sys., Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST,

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) and cases cited therein. Thus, Mr. Obaid's isolated act of consummating the purchase of shares in Palantir is insufficient to establish his purposeful availment of this forum.

The limited communication between Palantir personnel and Mr. Obaid regarding the stock purchase, alleged to have occurred only once and through a third-party in Switzerland, Compl. ¶ 756, is equally insufficient for this purpose. Such communications—and the government has alleged only one email—do not constitute purposeful availment under Ninth Circuit precedent. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'") (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1254 (9th Cir.1980), *cert. denied*, 475 U.S. 1122 (1986)). *See also Sarkis v. Lajcak*, 425 Fed. Appx. 557, 558 (9th Cir. 2011) (contacting California through phone and email to negotiate contract not purposeful availment), *cert. denied*, 565 U.S. 944 (2011); *Joseph Saveri Law Firm, Inc. v. Criden*, __ Fed. Appx. __, No. 15-15534, 2017 WL 2406736, at *2 (9th Cir. June 2, 2017) (sending emails that are received in California does not establish personal jurisdiction since the use of emails or other communications do not qualify as purposeful activity).

In fact, that Mr. Obaid had contact with California at all is entirely fortuitous, based upon Palantir's choice of Northern California for its headquarters, and so cannot establish purposeful availment. *See Boschetto,* 539 F.3d at 1019 (plaintiff failed to show purposeful availment in "a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

This conclusion is the same under the tort action "purposeful direction" version of minimum contacts analysis. *Picot v. Manos*, 780 F.3d 1206, 1212 (9th Cir. 2015) (contract claims analyzed under the "purposeful availment" test and tort claims are analyzed under a "purposeful direction" test). This requires that "defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Id.* at 1214 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)).

Simple transactions into California are insufficient to establish the required "express aiming." Thus, in *Adobe Systems*, involving internet sales of alleged trademark and copyright infringing software, the Northern District of California ruled that "[t]he 1.2% of Cardinal's sales shipped to California are likewise unhelpful to Adobe because they too show no purposeful direction." 2015 WL 5834135, at*5. Rather, these were the sort of "random, fortuitous, or attenuated" contacts, "[i]nvolving the forum state only because that is where the purchaser happened to reside," insufficient to support personal jurisdiction. *Id*. (internal quotation marks removed).

Such incidental or "fortuitous" contacts stand in marked contrast to cases where personal jurisdiction has been based on "purposeful direction." Thus, in *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000), the court found specific personal jurisdiction because defendants sent a letter from Georgia to a domain name registry in Virginia designed to force plaintiff, a California resident doing most of its business in California, to stop using a disputed web domain. The "injury" here was purposefully directed at a California resident with the intent to affect its operations in California.

The single alleged, isolated transaction with California, involving purchase of the Palantir stock, is insufficient to establish "purposeful availment" or "purposeful direction." The government has thus failed to allege sufficient contacts between Mr. Obaid and California to support specific personal jurisdiction.

11

### B.   The Government's Claim Does Not "Arise Out Of" or "Relate To" Mr. Obaid's Contacts with California

In the absence of purposeful availment, the government cannot establish that Mr. Obaid had the required minimum contacts to satisfy due process, and the court need not consider the other components of minimum contacts. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Nevertheless, even if purposeful availment could be established here, the government's civil forfeiture claim did not arise out of or relate to the California contacts it has alleged.

The Ninth Circuit has adopted a "but for" test to determine whether a claim arises out of a defendant's forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). That is, "but for" the litigant's activities in the forum, the claim would not have existed. *Id.* In *Ballard*, the court found a "but for" relationship between plaintiffs' claim—that defendant foreign bank was involved in a Ponzi scheme defrauding them of millions of dollars—and the bank's activities in the United States, where more than 60 percent of its depositors lived. Plaintiffs argued that, "but for" the bank's U.S. business activities, the Ponzi scheme's architect "would not have opened an account at the Bank and filled it with ill-gotten funds." *Id.* at 1500. The court agreed. In the instant case, there is no similar "but for" connection between the government's forfeiture claim and Mr. Obaid's contacts with California.

Indeed, if Mr. Obaid had purchased Palantir shares without any contact with California, under the government's theory, it would still be able to seek forfeiture of these assets. In a federal civil forfeiture action, the "claim" arises because the subject property was either "involved" in a prohibited transaction, or "traceable to such property," or from "proceeds traceable to" certain statutory violations and "specified unlawful activity" as defined in the federal money laundering statutes. 18 U.S.C. §§ 981(a)(1)(A) and (C). The government asserts, in a number of conclusory allegations, that the "DEFENDANT ASSETS represent a portion of the

12

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

proceeds of roughly $4.5 billion misappropriated from 1MDB," and that these "misappropriated funds were then used to purchase the DEFENDANT ASSETS, as well as to fund the co-conspirators' lavish lifestyles." Compl. ¶ 37. *See also* Compl. ¶¶ 15, 465. But, none of the underlying offenses that could have tainted the funds alleged to have been used in the purchase of Mr. Obaid's Palantir shares is alleged to have taken place in this forum. Significantly, the Complaint does not specifically allege that Mr. Obaid's purchase of Palantir shares was itself an act of "money laundering," and does not allege facts supporting his participation in any conspiracy to launder funds or to improperly divert funds from 1MDB. The government's claim did not arise from Mr. Obaid's contacts with California.

The "arising out of" requirement can be met here only if the underlying criminal offenses, which themselves may justify forfeiture, took place in California, and the government has alleged no such activities by Mr. Obaid. *See also Dole Food Co. v. Watts,* 303 F.3d 1104, 1114 (9th Cir. 2002) (company's fraud claims arose from defendants' contacts with California where those contacts were an "integral and essential part of the alleged fraudulent scheme on which Dole bases its suit."); *Tatung Co., Ltd. v. Hsu*, No. SACV 13-1743-DOC (ANx), 2016 WL 7508190, at *10 (C.D. Cal. Aug. 18, 2016) (plaintiff's claim as a defrauded creditor in California arose from defendant's activities in laundering funds out of California).

Thus, in *United States v. Batato*, 833 F.3d 413 (4th Cir 2016), *cert. denied,* 2017 WL 1300219 (U.S. Oct. 2, 2017), the court found that a civil forfeiture action arose from a claimant's alleged activities in the forum. *Batato* involved federal efforts to forfeit allegedly laundered funds—from a criminal copyright infringement scheme—on deposit at banks in New Zealand and Hong Kong. *Id*. at 418. The Court found that the claimants had operated 525 internet servers in Virginia, servers that "were used in furtherance of" the alleged conspiracy to infringe copyrights. *Id*. at 424. It concluded that "the forfeiture action before this

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

Court arises from the alleged illegal transfer of files conducted using the servers located in Virginia." *Id.* at 425.

### C.   The Exercise of Specific Personal Jurisdiction in the C.D. Calif. Would be Unreasonable

Even if Mr. Obaid's California contacts were sufficient for "purposeful availment" and gave rise to the government's forfeiture claim, the exercise of specific personal jurisdiction here would be unreasonable. In conducting its reasonableness analysis regarding a foreign litigant, the court must consider several factors, including: (1) the extent of the litigant's "purposeful injection" into the forum; (2) the burden associated with litigating in the forum; (3) potential conflict with the sovereignty of the litigant's home country; (4) the forum state's interest in adjudicating the dispute; (5) efficient judicial resolution of the controversy; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food Co.*, 303 F.3d at 1114. In this case, the first four factors weigh heavily in Mr. Obaid's favor.

First, Mr. Obaid's purposeful availment or injection in California (or the United States as a whole) is microscopic, to the extent it exists at all. The government alleges only two transactions that have anything to do with the United States—purchase of the Palantir shares and an unrelated transfer of funds from the Swiss account of Good Star to the Swiss account of Mr. Obaid, which was fortuitously "processed" through a New York correspondent bank. Compl. ¶¶ 752-58. "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981). *See also FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (hereinafter "*BAIC*") (quoting *Marina Salina Cruz,* 649 F.2d at 1271).

Second, Mr. Obaid is a foreign citizen residing abroad. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987). This is especially true when a litigant "'has done little to reach out to the forum state.'" *BAIC*, 828 F.2d at 1444 (quoting *Marina Salina Cruz*, 649 F.2d at 1272). As a result, "the burden of defending . . . in a foreign forum militates against exercising jurisdiction." *Id.* In this connection, the burden on Mr. Obaid also must be examined "in light of the corresponding burden on the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). As the plaintiff here is the federal government, "California is not more convenient than any other state." *BAIC*, 828 F.2d at 1445.

Third, because Mr. Obaid is a foreign national, the sovereign interests of his country must be considered. Indeed, his foreign nationality is "a factor bearing negatively on the reasonableness of personal jurisdiction," even more so than if the litigant lived in another state. *Marina Salina Cruz*, 649 F.2d at 1272. *See also Ballard*, 65 F.3d at 1501 (exercise of jurisdiction over foreign national implicates home nation's sovereign interests and weighs against reasonableness); *Sinatra*, 854 F.2d at 1199 ("This circuit has also stated that litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist.") (citing *BAIC*, 828 F.2d at 1444). Moreover, this factor weighs more heavily when, as in the case at bar, there is an "absence of connections to the United States in general, not just to the forum state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

Fourth, California's interest in adjudication of the civil forfeiture of Palantir stock is slight. The Palantir stock was created by a corporate charter issued by the State of Delaware and the stock certificate is not present in this District—contrary to the Complaint's assertion that the "DEFENDANT ASSETS are located in the Central District of California," Compl. ¶ 17—but in Switzerland. Garcia Decl. *See infra*, at pp. 19-21. The government's claims will be governed by federal rather

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

15

than California law. *Cf. BAIC*, 828 F.2d at 1444 (noting that "[i]f California law governed the dispute, California would have a substantial interest in adjudicating it."). In short, California has no interest in adjudicating this claim, and is involved here only because this is where the government chose to litigate and—as noted above—this forum is not more or less convenient than any other federal district. *Id*. at 1445. And, of course, due process limits on a forum's ability to exercise personal jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 134 S. Ct. at 1122.

Regarding the fifth and sixth factors, efficient resolution and the plaintiff's interest in convenient and effective relief, there is little reason to believe that judicial efficiency would be served by litigating this claim in California or that the government may obtain more convenient and effective relief here. There is no indication that the relevant witnesses or documents with respect to Mr. Obaid's activities are present in the Central District of California. *See Core-Vent Corp.*, 11 F.3d at 1489 ("In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located.").

The only factor that arguably weighs in the government's favor is the availability of an alternative forum, as Mr. Obaid has insufficient contacts to support an exercise of personal jurisdiction over him in the United States as a whole. *See Pebble Beach Co.*, 453 F.3d at 1158-59 (discussing application of "federal long-arm statute"). This fact, however, should militate against the exercise of jurisdiction, as it illustrates the fundamental unfairness of doing so. Moreover, the underlying circumstances involving the funds allegedly diverted from 1MDB, upon which the government's claim against Mr. Obaid's Palantir shares ultimately depends, suggests that Malaysia's interest is superior to that of the United States. If there was an injury here, it was to that state's citizens and sovereign interests. Clearly, on balance the court's exercise of personal jurisdiction in this case would be unreasonable.

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

### D.    The Court Cannot Exercise Personal Jurisdiction Over Mr. Obaid on a Conspiracy Theory

Nor can the court exercise personal jurisdiction over Mr. Obaid on a "conspiracy" theory. First, as explained below, *infra*, p. 24, the government has not adequately alleged facts showing that Mr. Obaid is part of a conspiracy, either in or out of this District. Second, due process requires that each defendant must individually have the requisite forum contacts for personal jurisdiction. *Walden*, 134 S. Ct. at 1123 ("a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction. Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State . . . .") (internal citation omitted). This is true even where a conspiracy has been alleged. *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp*., 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) ("actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction."). *See also*, *Angelini Metal Works Co. v. Hubbard Iron Doors, Inc.*, No. CV 11-6392-GHK(PLAx), 2016 WL 6304476, at *6 n.7 (C.D. Cal. Jan. 5, 2016) (noting that "courts have been especially dubious about using conspiracy allegations to confer personal jurisdiction over defendants," and that the Ninth Circuit has not adopted a conspiracy theory of personal jurisdiction) (citing *EcoDisc Tech. AG,* 711 F. Supp. 2d at 1089 and *Gen. Steel Domestic Sales, LLC v. Suthers*, No. CIV. S-06-411 LKK/KJM, 2007 WL 704477, at *5 (E.D. Cal. Mar. 2, 2007)).

Moreover, even if a conspiracy theory of personal jurisdiction was viable in the Ninth Circuit, it demands more than conclusory allegations of the existence of a conspiracy and the defendant's participation therein. *UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, No. CV 14–03466 MMM (JPRx), 2015 WL 12752879, at *9 (C.D. Cal. July 2, 2015). *See also Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992), *cert. denied*, 506 U.S. 1034 (1992) ("The cases are unanimous that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums."); *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 666 n.16 (5th Cir. 2004) ("[B]are allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes."); *accord  Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) ("[T]otally unsupported allegations of conspiracy cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction."), *cert. denied*, 454 U.S. 893 (1981).

## III.   VENUE IS NOT PROPER IN THIS DISTRICT

The government has failed to bring this action in a permissible forum. The Complaint asserts that: "Venue lies in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1355(b)(2) because acts and omissions giving rise to the forfeiture took place in the Central District of California, and/or pursuant to 28 U.S.C. § 1395(b), because the DEFENDANT ASSETS are located in the Central District of California." Compl. ¶ 18. In fact, however, neither provision provides venue in this District because the "asset"—Mr. Obaid's Palantir stock certificate and the *res* in this case—is not alleged to be present in the Central District of California (it is, in fact, located in Switzerland), and the Complaint does not allege "acts or omissions giving rise to the forfeiture" that occurred in the Central District of California.[5] Consequently, this case should be dismissed for improper venue

---

[5] Despite a request during counsels' most recent "meet and confer," the government has not provided its good faith basis for this allegation. In fact, the government's allegation is "boilerplate" pleading. Similar complaints, for example, *United States v. Real Property in London, United Kingdom, Owned by Stratton Street (London) Ltd.*, No. CV 17-4240 DSF (PLAx) (C.D. Cal. June 6, 2017), contain nearly identical language: "Venue lies in this

18

pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

### A.   The Palantir Stock is Not "Found" in this District

Section 1395(b) cannot support venue here because the government seeks to forfeit property—the Palantir shares—not "found" in this District. 28 U.S.C. § 1395(b) ("A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found."). The legal situs of stock was traditionally the State of the company's incorporation. *See Jellenik v. Huron Copper-Mining Co.*, 177 U.S. 1, 13 (1900); 11 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corps. § 5101 (2012) ("Fletcher Cyclopedia"). Today, however, courts "generally look to the location of the share certificates rather than the corporate domicile" based upon Article 8 of the Uniform Commercial Code ("U.C.C."). 11 Fletcher Cyclopedia, at § 5101. California's adoption of Article 8 as part of its Commercial Code indicates that, for purposes other than taxation, it follows the modern view.[6]

In this regard, California Commercial Code section 8102 defines a "security" as "an obligation of an issuer or a share . . . represented by a security certificate." Cal. Com. Code § 8102(a)(15)(A). It further declares that "delivery" of a certificated security occurs when the purchaser "acquires possession of the security certificate." *Id.* at § 8301(a)(1). Even more tellingly, section 8112 states: "The interest of a debtor in a certificated security may be reached by a creditor only by actual seizure of the security certificate by the officer making the

---

district pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1355(b)(2) because acts and omissions giving rise to the forfeiture took place in the Central District of California, and/or pursuant to 28 U.S.C. § 1395(b), because Defendant Assets are located in the Central District of California." ¶ 16. Of course, in that case, by the government's own assertion, the "assets" are real estate in London, England.

[6] For purposes of taxation, the situs of stock is generally the taxpayer's domicile, unless a statute expressly provides otherwise.  *See, e.g., Pacific Tel. Co. v. Franchise Tax Bd.*, 498 P.2d 1030, 1033 (Calif. 1972) (en banc); *see also* 14A Fletcher's Cyclopedia, at § 6917; Harold Marsh, Jr., R. Roy Finkle & Keith Paul Bishop, Marsh's Calif. Corp. Law § 8.03 (4th ed. 2017) ("Marsh's Calif. Corp. Law").

19

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

attachment or levy." *Id*. at § 8112(a). Comment 1 to section 8112 thus declares, "[i]n dealing with certificated securities the instrument itself is the vital thing." *Id*. at cmt. 1. *See* Marsh's Calif. Corp. Law § 8.03 (under California's version of U.C.C. Article 8, "the situs of shares in a corporation is, therefore, the location of the share certificate. For instance, a valid attachment or other levy upon a security generally requires that such security be actually seized."), *accord Wells Fargo Bank Minn., NA v. Envirobusiness, Inc*., 22 N.E.3d 125, 132-34 (Ill. Ct. App. 2014) (older case law establishing stock situs as state of incorporation superseded by newer language of Illinois U.C.C. deeming situs as certificate location); *Nastro v. D'Onofrio*, 263 F. Supp.2d 446, 453 (D. Conn. 2003) (forum state had adopted U.C.C. Article 8 and "[e]ven though the companies and, presumably, the companies' assets are located in Connecticut [the forum state], the certificates evidencing ownership of the shares of the Connecticut companies are located in Jersey. As such, exercising quasi-in rem jurisdiction over the shares is impossible."); *Wolverine Flagship Fund Trading Ltd. v. Am. Oriental Bioengineering, Inc*., 134 A.3d 992, 534-39 (N.J. Super. Ct. 2016) (New Jersey's adoption of U.C.C. Article 8 requires actual attachment of certificated shares); *cert. denied*, 149 A.3d 293 (N.J. 2016). *See also* 10 Fletcher's Cyclopedia § 4760 ("For purposes of attachment and execution, stock is located where the corporation is created. This, at least, was the general rule prior to the adoption of Article 8 of the Uniform Commercial Code, which now governs in some form in all of the states."). Thus, under California law, the legal situs of Mr. Obaid's stock is where the stock certificate is located, in Switzerland. Garcia Decl.

Notably, however, even under the pre-U.C.C. view, the legal situs of Mr. Obaid's Palantir stock is not California. Rather, because Palantir Technologies is incorporated in Delaware, its stock would be deemed located in that state under the traditional rule. *See* Restatement (Second) of Conflict of Laws § 64 (a state has power to exercise judicial jurisdiction over stock in either the state of incorporation

20

or the state where the stock certificate is located).[7] 28 U.S.C. § 1395(b) does not support venue in this court.

Moreover, because the Palantir stock is not "found" in this district, serious questions exist as to whether the government has complied with proper process. Rule E(4)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires the person executing process to make "due and prompt return" of such process when "it appears that the defendant cannot be found within the district . . . ." Yet the government has failed to file any return of process with this court, and despite repeated requests, has only cryptically confirmed that the arrest warrant was served electronically on "Palantir counsel," without specifying to whom this refers, or where this individual is located.[8] It is unclear, for example, whether this individual is within the Central or Northern District of California (or elsewhere). The government's failure to provide specifics regarding execution (including "due and prompt return") of the arrest warrant has impeded Mr. Obaid's ability to ascertain whether proper procedures have been followed, and where the government believes the Palantir shares to be "found."

_____

[7] Del. Code Ann., tit., 8, § 169, at issue in *Shaffer v. Heitner*, 433 U.S. at 192, does not alter the conclusion that the certificate controls the legal situs of Mr. Obaid's stock. That law deems Delaware to be the legal situs of all stock in a Delaware corporation, regardless of where the stock certificates are physically located. However, application of that provision is limited to "all purposes of title, action, garnishment and jurisdiction *of all courts held in this State* . . ." (emphasis added). By its plain language, therefore the Delaware statute does not purport to establish the legal situs of stock in this case. *See United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 825 F. Supp. 191, 193 (N.D. Ill. 1993) (declining to apply Delaware situs statute in forfeiture action because "[i]n deciding an issue involving state [property] law, the district court is to follow the laws of the forum state, including its choice-of-law principles.").

[8] The government's only response on this issue has been an email provided October 10, 2017, which states, "Palantir counsel agreed to accept service of the arrest warrant *in rem* electronically and, on June 20, 2017, within four days of the warrant being issued by the Court, the government emailed copies of the complaint and arrest warrant *in rem* to Palantir counsel. The government will file the arrest return as soon as practical." Email from John Kucera, Assistant U.S. Att'y, Cent. Dist. of Calif., to Jonathan Barr *et al.*, BakerHostetler, LLP (Oct. 10, 2017) (on file with counsel).

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### B.   The "Acts or Omissions" Giving Rise to this Forfeiture Action Did Not Occur in this District

The government also cannot rely on 28 U.S.C. §§ 1355(b) because the Complaint does not allege any "acts or omissions giving rise to the forfeiture" that occurred in this District. As explained above, *supra*, pp. 12-13, the "acts or omissions" giving rise to a forfeiture action under 18 U.S.C. §§ 981(a)(1)(A) and (C) are the underlying offenses—identified in 18 U.S.C. §§ 1956 and 1957. Compl. ¶¶ 947-55. Notably, each of the statutes relied upon by the government requires commission of a "specified unlawful activity" ("SUA"). The government's First Claim for Relief is based upon specified unlawful activities, including misappropriation of public funds, fraud against a foreign bank, wire fraud and/or international transportation or receipt of stolen or fraudulently obtained property. Compl. ¶ 948. The government's Second, Third and Fourth Claims for Relief are based upon three money laundering provisions—18 U.S.C. §§ 1957, 1956(a)(1)(B)(i), and 1956(a)(2)(B)—each of which also requires specified unlawful activity.

It is the specified unlawful activity that transforms lawful spending of money into various forms of money laundering. *See United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 884 (9th Cir. 2009) ("The forfeiture statute . . . authorizes civil forfeiture of the *proceeds of activities that violate certain federal laws*.") (emphasis added); *United States v. McCarthy*, 271 F.3d 387, 394-95 (2d Cir. 2001) ("To prevail under the money laundering statutes, the government must show that defendant '(1) acquire[d] the proceeds of a specified unlawful activity and then (2) engage[d] in a financial transaction with those proceeds.'"), *abrogated on other grounds by Eberhart v. United States,* 546 U.S. 12 (2005).

It is therefore specified unlawful activity that "giv[es] rise to the forfeiture" within the meaning of the forfeiture venue statutes, as it creates the government's ability to seek forfeiture in the first place. *See United States v. Approx. $1.67*

22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Million (US) in Cash, Stock, and Other Valuable Assets Held*, 513 F.3d 991, 998 (9th Cir. 2008) (venue appropriate because government "sufficiently demonstrated that [the defendant's] marijuana smuggling enterprise, *which gave rise to the forfeiture action*, had significant interactions with the Northern District of California," including numerous meetings, smuggling drugs through a P.O. Box, and storing cash and drugs in a storage locker) (emphasis added); *United States v. Contents of Account No. 2033301 in the Name of Luis Freixas,* 831 F. Supp. 337, 340 (S.D.N.Y. 1993) (venue appropriate for forfeiture predicated on anti-structuring violation because "*the activity giving rise to forfeiture—the structuring of cash deposits* . . . occurred in New York."); *United States v. Bank of Am. Account No. XXXXXXXX4939*, No. 5:14-CV-723 (ATB), 2015 WL 224774, at *2 (N.D.N.Y. Jan. 15, 2015) (venue appropriate because the "United States has clearly alleged that *substantial criminal activity supporting the forfeiture* in this action occurred in the Northern District of New York," including selling and shipping synthetic cannabinoids therein) (emphasis added); *United States v. $633,021.67 in U.S. Currency*, 842 F. Supp. 528, 530, 532-34 (N.D. Ga. 1993) ("giving rise" venue proper in civil forfeiture because some predicate criminal acts of communications pirating occurred in the district).

Such an interpretation of "giving rise to the forfeiture" is consistent with congressional intent. The "giving rise" language was added as part of the Money Laundering Enforcement Improvements Act of 1991, whose sponsor, Senator Alfonse D'Amato, entered into the *Congressional Record* an analysis of the amendment which stated, "Subsection (b)(1) sets forth as a general rule that jurisdiction for an in rem action lies in the district in which the acts giving rise to the forfeiture were committed. This would be a great improvement over current law which requires the government to file separate forfeiture actions in each district in which the subject property is found, *even if all of the property represents the proceeds of criminal activity committed in the same place*. (For example, if a

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Miami-based drug dealer launders his money by placing it in bank accounts in six states, the government would have to institute six separate forfeiture actions under 981 to recover the money.)." 137 Cong. Rec. S16640 *S16642 (Nov. 13, 1991) (statement of Sen. D'Amato) (emphasis added). Senator D'Amato's example of the "Miami-based drug dealer" who launders drug money by "placing it in bank accounts in six states" indicates that the "giving rise" venue was designed to permit a *single, consolidated forfeiture action in Miami, the place where the underlying criminal activity occurred,* rather than filing six separate forfeiture actions in the districts where the tainted money was "found" in various bank accounts. To the extent the government is relying on Mr. Obaid's purchase of Palantir stock, it does not allege that any acts in the Central District of California that could have given rise to its forfeiture claim. Compl. ¶¶ 751-758.

Nor can venue be based on any "conspiracy." Indeed, the government has not alleged facts supporting a conclusion that Mr. Obaid is part of a conspiracy. Violation of the federal money laundering conspiracy statute, 18 U.S.C. § 1956(h), requires (1) "an agreement existed between two or more persons to commit a money laundering offense;" and (2) evidence that the defendant "knowingly and voluntarily joined in or participated in the conspiracy." *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005). The Complaint fails to allege any agreement by Mr. Obaid to participate in any unlawful object, including money laundering— in or out of the District. Venue cannot, therefore, be grounded in a "conspiracy." The Complaint's failure to plead a claim based on money laundering conspiracy is further addressed in Claimant's Motion to Dismiss Pursuant to Rule 12(b)(6), that will be filed following the filing of this motion.

Because the property the government seeks to forfeit is not present in this District, and because none of the acts giving rise to the forfeiture took place here, venue is not proper in the Central District of California and this action should be dismissed on that account.

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

## CONCLUSION

The government has failed to show that Mr. Obaid has minimum contacts sufficient to satisfy due process and to support the court's personal jurisdiction over him. Similarly, the government has failed to establish that the Central District of California is a permissible venue in which to adjudicate this action. For all of the reasons stated above, Mr. Obaid's Motions to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue should be granted.

Dated:  October 11, 2017

Respectfully submitted,

BAKER & HOSTETLER LLP

By:   */s/ David B. Rivkin, Jr.*
ANDREW A. WOOD
DAVID B. RIVKIN, JR.
JONATHAN R. BARR
ELIZABETH PRICE FOLEY
JONATHAN B. NEW

Attorneys for Claimant

TAREK OBAID

CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Claimant Tarek Obaid's Notice of Motion and Motion to Dismiss Verified Complaint In Rem Pursuant to Rules 12(b)(2) and 12(b)(3) and Memorandum of Points and Authorities in Support* and its attachment were electronically field on October 11, 2017, with the Clerk of the Court using the CM/ECF system thereby sending a notice of electronic filing to all counsel of record. In addition, I hereby certify that a true and correct copy of the foregoing was served by e-mail on John Kucera, Jonathan Galatzan, and Woo S. Lee.

By:     /s/ David B. Rivkin, Jr.
        DAVID B. RIVKIN, JR.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

26
CLAIMANT TAREK OBAID'S MOTION TO DISMISS VERIFIED COMPLAINT IN REM
PURSUANT TO RULES 12(b)(2) AND 12(b)(3)

611489763.1